**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

TERRANCE L. DOOLEY,

      Petitioner,

v.

      Case No. 3:24-CV-02304-NJR

UNITED STATES OF AMERICA,

      Respondent.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on Petitioner Terrance L. Dooley's motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. (Doc. 1). Dooley contends that his conviction and corresponding sentence for possessing a firearm in violation of 18 U.S.C. § 922(g)(1) must be vacated because he received ineffective assistance from his trial counsel in violation of his Sixth Amendment rights. For the reasons set forth below, Dooley's motion is denied.

### BACKGROUND

Dooley's criminal case dates to 2022, when he was charged with possessing a firearm after having been convicted of a felony offense in violation of 18 U.S.C. § 922(g)(1). *See United States v. Dooley*, No. 3:22-cr-30058-NJR (S.D. Ill.) ("Criminal Case"). The indictment alleged that Dooley, knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, possessed four firearms "shipped and transported in interstate commerce": (1) a Smith & Wesson .357 caliber revolver; (2) a Glock 19, 9mm handgun; (3) a Taurus Millennium G2, 9mm

handgun; and (4) a Phoenix Arms, .22 LR caliber pistol. (Criminal Case, Doc. 1). For the

majority of the case, he was represented by Assistant Federal Public Defender G. Ethan

Skaggs.

On April 24, 2023, Dooley pleaded guilty as charged without a plea agreement.

(Criminal Case, Doc. 31). As part of his plea, he stipulated to the following facts:

1. On January 31, 2022, law enforcement officers with the United States Marshals Fugitive Task Force executed a search warrant at the home of Defendant Terrance L. Dooley in Cahokia Heights, Illinois.

2. In the master bedroom of the residence, officers found four firearms: a Smith & Wesson .357 caliber revolver, bearing serial # 77K9186 (in a safe under the bed); a Glock 19, 9mm handgun, bearing serial # BPWX275 (on nightstand by the bed); a Taurus Millennium G2, 9mm handgun, bearing serial # TJ048161 (in bedroom closet); and a Phoenix Arms, .22 LR caliber pistol, bearing serial # 4430695 (in bedroom closet).

3. Also in the safe found under the bed in the master bedroom (along with the .357 caliber revolver identified above), officers found a ledger of drug sales and $1,370 in United States currency.

4. In the closet of the master bedroom, officers found a suitcase containing approximately 3.6 kilograms of marijuana in 10 vacuum sealed bags.

5. Defendant was placed under arrest. Defendant participated in a post-arrest interview and, after being advised of and waiving his constitutional rights, told officers that he shared the master bedroom of the residence with his girlfriend. Defendant admitted that the marijuana found in the master bedroom belonged to him. Defendant further acknowledged that the contents of the safe found under the bed belonged to him.

6. Regarding the firearms found in his bedroom, Defendant admitted handling the .357 caliber revolver, the Glock 9mm, and the Taurus 9mm. Defendant told officers that he took these firearms from his son, Zion Dooley, who also lives at the residence.

7. Defendant told officers that the .22 LR pistol found in his closet belonged to "John Williams," who left it at the residence. Defendant told

officers that he knew he was a convicted felon and that he was not allowed to possess firearms.

8. The Smith & Wesson .357 caliber revolver, bearing serial # 77K9186, and found in the safe under Defendant's bed, was reported stolen by St. Louis Metro Police.

9. On or about January 31, 2022, Defendant knowingly possessed the Smith & Wesson .357 caliber revolver, bearing serial # 77K9186; the Glock 19, 9mm handgun, bearing serial # BPWX275; the Taurus Millennium G2, 9mm handgun, bearing serial # TJ048161; and the Phoenix Arms, .22 LR caliber pistol, bearing serial # 4430695.

10. On or about June 30, 2005, Defendant was knowingly convicted of a felony punishable by imprisonment for a term exceeding one year, namely: Possession with Intent to Deliver a Controlled Substance, in Madison County Circuit Court case number 03-CF-3324. Defendant knew of his status as a convicted felon at the time he possessed the above-mentioned firearms.

11. Defendant's possession of the firearms took place in the Southern District of Illinois.

12. The firearms were manufactured outside of the State of Illinois and transported in interstate commerce.

(Criminal Case, Doc. 32).

On December 14, 2023, the undersigned sentenced Dooley to 56 months in prison to be followed by two years of supervised release. (Criminal Case, Doc. 50). He did not appeal. He is presently incarcerated at FCI Marion and is scheduled to be released from custody on May 12, 2027. *See* BOP Inmate BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last visited July 13, 2026).

Dooley moved to vacate his conviction and sentence under 28 U.S.C. § 2255 on October 10, 2024. (Doc. 1). On initial review, the Court ordered the Government to file a response. (Docs. 2, 6). Dooley did not file a reply brief.

## LEGAL STANDARD

Section 2255 of Title 28 of the United States Code provides federal prisoners with a post-conviction remedy to test the legality of their detention "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States,* 467 F.3d 1063, 1068 (7th Cir. 2006)). Thus, it "is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citations omitted).

## DISCUSSION

Dooley argues that his conviction must be vacated because his attorney performed below constitutional standards in several respects. He says his attorney should have (1) contested the constitutionality of § 922(g)(1) under the Supreme Court's holdings in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024); (2) contested the sufficiency of the indictment's interstate commerce allegations; and (3) challenged the search of his home.

The Government responds that any motion challenging the constitutionality of § 922(g)(1) would have been meritless. It further argues that an objection to the commerce nexus allegations in the indictment would have been frivolous because the allegations

were sufficient for him to prepare a defense. Finally, the Government argues that there was no basis for Dooley's counsel to challenge the search of his residence under the Fourth Amendment where the officers obtained a warrant.

The Sixth Amendment guarantees criminal defendants the right to counsel. U.S. Const. amend. VI. And "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To prevail on an ineffective assistance claim, a petitioner is required to "meet the familiar two-part standard set forth in *Strickland*." *McElvaney v. Pollard*, 735 F.3d 528, 532 (7th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The petitioner must show that his counsel's performance was deficient, "meaning it fell below an 'objective standard of reasonableness'" and that his counsel's deficient performance prejudiced him. *Id.* at 532 (quoting *Strickland*, 466 U.S. at 688). In assessing whether an attorney's performance was deficient, a court's review is deferential, and a prisoner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound [] strategy." *Pierce v. Vanihel*, 93 F.4th 1036, 1048 (7th Cir. 2024) (quoting *Mosley v. Atchison*, 689 F.3d 838, 847-48 (7th Cir. 2012)). To establish prejudice, there must be a reasonable probability that, but for the deficient performance, the result of the proceeding would be different. *Strickland*, 466 U.S. at 694.

A court may address the elements of the *Strickland* test "in whichever order is most expedient." *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). Moreover, where a claim of ineffective assistance fails on one prong, the court need not address the other prong

insofar as the failure to satisfy either prong is fatal to the claim. *See Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993).

A.

Dooley first argues that his attorney performed deficiently by failing to file a motion challenging the constitutionality of the indictment under the Supreme Court's recent holdings in *Bruen* and *Rahimi*. He asserts that he is a "non-violent felon, whose last run-in with the law occurred in 2005," so Congress cannot, consistent with the Second Amendment, abridge his right to bear arms. (Doc. 1, p. 3).

The Supreme Court has construed the Second Amendment to "protect[] the right of 'all Americans' to keep and bear firearms for self-defense. *United States v. Hemani*, 608 U.S. ----, ----, 146 S. Ct. 1677, 1685 (2026) (citing *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008)). Even so, the Court has recognized that this right has limits and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626.

In *Bruen*, the Supreme Court adopted a two-step test to determine whether a challenged regulation survives scrutiny under the Second Amendment. At the first step, a court must assess whether the Second Amendment's "plain text" covers the challenged conduct. *Bruen*, 597 U.S. at 24. If so, "the Constitution presumptively protects that conduct." *Id.* For a regulation to pass muster, the Government must "demonstrat[e] that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* In other words, the Government must show "show that its challenged law did not infringe the historical understanding of the codified right." *Wolford v. Lopez*, 609 U.S. ----, ----, 2026 WL

1825723, at *6 (U.S. June 25, 2026). This inquiry is guided by historical scholarship and analogical comparisons to historical regulations. *Id.* (citing *Bruen*, 597 U.S. at 28).

Dooley was convicted under 18 U.S.C. § 922(g)(1), which generally prohibits individuals convicted of "a crime punishable by imprisonment for a term exceeding one year" from possessing firearms. After the Supreme Court's decision in *Bruen*, the provision has been the subject of much litigation, particularly by defendants who contend the law is unconstitutional on its face or as applied to them. In his present motion, Dooley argues that his counsel was ineffective for failing to broach the issue in *his* case. That argument comes up short.

In constitutional litigation, challenges to statutes come in two forms: facial and as-applied. *United States v. Seiwert*, 152 F.4th 854, 860 (7th Cir. 2025). To prevail on a facial challenge, a party must demonstrate the challenged law is unconstitutional in *all* of its applications. *Lukaszczyk v. Cook Cnty.*, 137 F.4th 671, 673 (7th Cir. 2025). To the extent Dooley believes his attorney should have raised a facial challenge to § 922(g)(1)'s constitutionality, that argument has been squarely foreclosed by the Seventh Circuit. *See United States v. Prince*, 171 F.4th 1009, 1011 (7th Cir. 2026); *United States v. Watson*, 171 F.4th 1012, 1023 (7th Cir. 2026).

An as-applied challenge would not have met greater success. To succeed on an as-applied challenge the moving party must show the statute is unconstitutional because of the way it was applied to the particular facts of his case. *See United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011). Picking up that mode of reasoning, Dooley asserts that

his last felony conviction occurred in 2005, and he never has been convicted of a violent crime, so the disarmament required by § 922(g)(1) is unconstitutional.

Once again, caselaw dooms that argument. In *Watson*, the Seventh Circuit confirmed that historical legislatures "had the power to permanently disarm dangerous felons" and therefore "individuals convicted of dangerous felonies pose a risk to society and may be disarmed consistent with the Second Amendment." 171 F.4th at 1023. The defendant in that case had a prior conviction for possessing cocaine with intent to distribute and, like Dooley, argued that § 922(g)(1) was unconstitutional as applied to him. *Id.* at 1014. But the court of appeals concluded that a "felony drug conviction" constitutes a dangerous crime, so the Government can, consistent with the Second Amendment, preclude such individuals with such convictions from possessing firearms. *Id.* at 1023. In reaching its conclusion, the court emphasized the inherent dangers attending the combination of drugs and guns and noted that a "dealer of illegal drugs . . . is a threat to the physical safety of society." *Id.* at 1024.[1]

Dooley was convicted in 1991 of possessing with intent to distribute marijuana and in 2005 of possessing with intent to distribute cocaine. (Criminal Case, Doc. 37, ¶¶ 37, 41). The latter conviction was set out in the indictment as the predicate offense for his conviction of the § 922(g)(1) charge at issue here. Without question, Dooley's case is governed by the reasoning of *Watson*, as he has multiple felony drug convictions, and it therefore follows that § 922(g)(1) is constitutional as applied to him. Certainly, it is notable

---

[1] The court expressly reserved ruling on whether a particular defendant whose prior felony was not "dangerous" could mount a successful as-applied challenge. *Watson*, 171 F.4th at 1025.

that one of Dooley's prior convictions related to marijuana, a drug that now is legal in many states, including Illinois, and his 2005 conviction is now more than 20 years old. Dooley further notes that his criminal history is non-violent. However, *Watson* does not leave room for such individualized consideration. *See United States v. Delgado*, No. 20 CR 542, 2026 WL 1699562, at *3 (N.D. Ill. June 11, 2026) (rejecting a challenge brought by a defendant convicted only of a possession offense because "*Watson* does not endorse . . . picking and choosing which portions of the record face individualized scrutiny and which remain subject to categorical review."). And even if it did, Dooley neglects to mention several, more recent convictions (though not all are necessarily punishable by more than a year in prison), at least one of which—a domestic battery conviction—is indicative of violence. (Criminal Case, Doc. 37, ¶¶ 42-48).

In sum, Dooley has not demonstrated that a motion to dismiss the indictment under *Bruen* would have had any prospect of success. Defense counsel is not ineffective for declining to file a meritless motion. *See Washington v. Boughton*, 884 F.3d 692, 701 (7th Cir. 2018); *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013). Accordingly, this claim fails.

B.

Dooley next argues that his attorney should have challenged the indictment for failing to "offer[] [] evidence that [the firearms] were shipped or transported in interstate commerce." (Doc. 1, p. 3). The Government responds that the indictment's *allegation* that the firearms were shipped or transported in interstate commerce was all that was

necessary, so defense counsel could not possibly have been ineffective for failing to challenge it.

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c)(1). It is "legally sufficient if it (1) states all the elements of the crime charged; (2) adequately informs the defendant of the nature of the charges so that he may prepare a defense; and (3) allows the defendant to plead the judgment as a bar to any future prosecutions." *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010) (*per curiam*) (citing Fed. R. Civ. P. 7(c)(1)). The document need not contain detailed allegations. *United States v. Clark*, 140 F.4th 395, 418 (7th Cir. 2025) (citing *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007)). "So long as an indictment 'sets forth the offense in the words of the statute itself' along with 'the elements necessary to constitute the offense,' it will generally survive a motion to dismiss." *Id.* (quoting *United States v. Bates*, 96 F.3d 964, 970 (7th Cir. 1996)).

Dooley argues that the indictment offered "no evidence" that the subject firearms were shipped or transported in interstate commerce. However, there is no reason his attorney should have filed a motion challenging the indictment on that basis. It is not especially difficult to properly allege the interstate commerce element of a § 922 prosecution. The Seventh Circuit has upheld a § 922(g) indictment that contained the phrase "did knowingly possess in and affecting commerce." *United States v. McCarty*, 862 F.2d 143, 145 (7th Cir. 1988). It also has turned away a challenge where an indictment stated that a defendant possessed a firearm "which had previously traveled in interstate commerce." *United States v. Lowe*, 860 F.2d 1370, 1374 (7th Cir. 1988). Other courts in this

circuit have held similarly. *See United States v. Chavez*, 625 F. Supp. 3d 760, 767 (N.D. Ill. 2022) (finding sufficient an indictment with commerce allegations phrased similarly to the indictment in *Lowe*). Dooley's indictment used slightly different language, alleging that the firearms were "shipped and transported in interstate commerce." (Criminal Case, Doc. 1). But he makes no effort to explain why this language is materially distinguishable from the language used in either *McCarty* or *Lowe*.

Dooley appears to believe that the Government's commerce allegations are "conclusory," but he forgets that the facts alleged in the indictment must be presumed as true when evaluating its sufficiency. *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009). "Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." *Id.* (citation omitted). And Dooley offers no explanation why the details included in his indictment, which include the serial numbers of the subject firearms, were insufficient to allow him to contest the commerce element. *Cf. McCarty*, 862 F.2d at 145 ("Given the minimal interstate nexus § 922(g) requires, the detailed information about the handgun was more than enough for McCarty to discover how to defend against the interstate commerce element of the charge."). Dooley's attorney was not ineffective for declining to raise this issue.

## C.

Finally, Dooley argues that his attorney should have contested the search of his residence, where the firearms supporting the indictment were found. He states that officers "forced their way into [his] home without a warrant in an attempt to apprehend

Page 11 of 18

[his] son." (Doc. 1, p. 3). And on entering the home, the officers noticed a firearm "in [Dooley's] bedroom and proceeded to search that room for evidence of a crime." (*Id.* at p. 3-4). He submits that his attorney should have challenged the investigators' failure to obtain a warrant and emphasizes the "mere presence of a firearm in a home is not probable cause of a crime being committed." (*Id.* at p. 4).

To demonstrate actual prejudice from an attorney's alleged ineffective assistance in failing to raise a Fourth Amendment claim regarding a search or seizure, Dooley must prove that the issue is meritorious *and* establish "a reasonable probability that the verdict would have been different absent the excludable evidence." *Ebert v. Gaetz*, 610 F.3d 404, 411 (7th Cir. 2010); *see also Bloch v. United States*, No. 18-3180, 2026 WL 1429736, at *1 (7th Cir. May 21, 2026).

Dooley does not articulate what legal arguments he wishes his counsel had raised in great detail. His argument that the officers searched his home without a warrant is especially curious, in light of his stipulation when he pleaded guilty that the officers "executed a search warrant" at his home. (Doc. 32, ¶ 1). He has offered no basis "to override the verity that presumptively attaches to a defendant's statements when entering a guilty plea." *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010) (citing *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2010)). And the record makes clear that there *was* a warrant for the search of Dooley's residence, issued by Judge Julie Katz of the St. Clair County Circuit Court, and produced here by the Government. (Doc. 7).

In their complaint for the warrant, St. Clair County Sheriff's deputies described their investigation, on January 31, 2022, into a report of shots fired in Cahokia Heights.

Page 12 of 18

(*Id.* at p. 3). During their investigation, the officers encountered a victim who reported that he had been followed from a gas station and shot at by occupants of a maroon Chevrolet Impala. The victim identified one of the occupants of the Impala as Zion Dooley, Terrance Dooley's son ("Zion"). The officers located several shell casings on the scene and determined that Zion was on active juvenile probation and subject to GPS monitoring. GPS records confirmed he had been near the site of the shooting.

Based on that information, the officers obtained an *arrest* warrant for Zion for violating the conditions of his probation. When the officers executed the arrest warrant at Zion's residence in Cahokia Heights (which he shared with Terrance Dooley), they conducted a protective sweep of the home and observed in plain view a rifle capable of firing bullets of the same caliber as the casings they had recovered earlier. Terrance Dooley and his girlfriend were temporarily detained at the scene, and officers determined that they did not have valid Firearm Owner's Identification (FOID) cards. (*Id.*). The warrant authorized the officers to search the premises and seize evidence, including firearms, ammunition, and other weapons. (*Id.* at p. 5). Dooley's assertion that the officers searched his home without a warrant is unsupported.[2]

---

[2] There is one wrinkle that merits some discussion: Dooley attached to his motion a "declaration" in which he described his interactions with the investigating officers. Relevant here, he alleges that after the officers removed him, his girlfriend, and Zion from the home, they informed him that he "could not enter the home until they obtained a search warrant." (Doc. 1, p. 5). He alleges that the officers "then reentered [his] home," presumably to search the premises, while he remained outside for between three to four hours. (*Id.*).

Although Dooley does not say so explicitly, one might read this allegation to suggest that the officers began their search of his home *before* they had obtained the search warrant. Notably, Dooley says the officers arrived at his house at "approximately 1430 hours" — or 2:30 p.m. — yet the search warrant did not issue until approximately 4:35 p.m. (Doc. 7, p. 6). There is little reason to think that the tasks attendant to executing the arrest warrant for Zion lasted more than two hours, so if Dooley is to be believed, his claim the officers' reentered his home and began their search (potentially before obtaining the warrant) might merit further exploration.

Construed liberally, his quarrel may be with the officers' *initial* entry into his home where they apparently discovered a firearm in plain view. However, it is undisputed that the officers had an arrest warrant for Dooley's son, who resided at the home. It is well-settled that an arrest warrant grants officers authority "to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). And while "a suspect is being, or has just been, arrested," officers may conduct a so-called "protective sweep" to provide assurance that the area "is not harboring other persons who are dangerous and who could unexpectedly launch an attack." *Maryland v. Buie*, 494 U.S. 325, 333 (1990). "In light of the doctrine's focus on safety, this exception to the Fourth Amendment's warrant requirement 'is narrowly confined to a cursory visual inspection of those places in which a person might be hiding.'" *United States v. Schmitt*, 770 F.3d 524, 531 (7th Cir. 2014) (quoting *Buie,* 494 U.S. at 327).

During their execution of the arrest warrant, officers apparently observed a rifle in plain view, a fact that Dooley does not contest. Dooley also does not clearly contest the scope of the officers' protective sweep incident to Zion's arrest or offer a legal basis for

---

The Court sees at least two problems precluding further review, however. First, Dooley's "declaration" is both unsigned and undated, meaning that it cannot be considered under 28 U.S.C. § 1746. *See Smith-Johnson v. United States*, No. 23-CV-03914, 2026 WL 1260840, at *5 (S.D. Ill. May 7, 2026).

Second, even if the Court considered Dooley's declaration *and* assumed that the officers commenced the search before obtaining the warrant, Dooley has not explained why the Government would not have prevailed on a motion to suppress under the inevitable discovery doctrine. "A premature seizure does not lead to exclusion of evidence when a warrant, authorizing everything that occurred, was certain to issue." *United States v. Mikos*, 539 F.3d 706, 709 (7th Cir. 2008). Nothing in the search warrant application (Doc. 7) turns on anything the officers may have learned from any premature search. Therefore, to the extent this argument is properly presented, the Court does not believe Dooley's attorney was ineffective for failing to raise it.

suppressing a weapon discovered in plain view during an otherwise lawful search. *Cf. Buie*, 494 U.S. at 330 ("There is also no dispute that if Detective Frolich's entry into the basement was lawful, the seizure of the red running suit, which was in plain view and which the officer had probable cause to believe was evidence of a crime, was also lawful under the Fourth Amendment.").

Dooley argues that "the mere presence of a firearm in a home is not probable cause of a crime being committed." (Doc. 1, p. 4). The significance of this argument is not immediately apparent. At the time of the search, Dooley's son was under investigation for a shooting. The presence in plain view of a weapon capable of discharging rounds of the same caliber as the casings recovered at the scene of the shooting undoubtedly helps form probable cause for a search of the premises. Moreover, as the Government points out, there is no obvious innocent explanation for the firearm, as *none* of the occupants of the home had valid FOID cards. Having failed to articulate a meritorious Fourth Amendment claim his attorney should have raised, Dooley has not established a right to relief.

### CONCLUSION

No hearing is necessary to resolve Dooley's claims because "the files and records of the case conclusively show" that he is not entitled to relief. *Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010) (quoting 28 U.S.C. § 2255(b)). And, for the reasons stated above, his motion to vacate, set aside, or correct his sentence (Doc. 1) pursuant to 28 U.S.C. § 2255 is **DENIED**. This civil action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings requires district courts to consider whether to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." To meet this standard, a petitioner "must have a constitutional claim (or an underlying procedural argument on which a constitutional claim depends), and he must 'demonstrate that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong.'" *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)) (emphasis omitted). Here, reasonable jurists would not debate that all of Dooley's claims lack merit. Accordingly, a certificate of appealability is denied.

## NOTICE OF APPELLATE RIGHTS

If Dooley wishes to contest this Order, he has two options. He may seek review of the Order by the Seventh Circuit or request the undersigned to reconsider the Order before going to the Seventh Circuit. If Dooley chooses to go straight to the Seventh Circuit, he will only be allowed to proceed on his appeal if he first obtains a certificate of appealability. The undersigned has already declined to issue a certificate of appealability. So, Dooley must request a certificate of appealability from the Court of Appeals pursuant to Rule 22 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c). He must also file a notice of appeal within 30 days from the entry of judgment or order appealed from. Fed. R. App. P. 4(a)(1)(A). The deadline can be extended for a short time only if

Page 16 of 18

Dooley files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. Fed. R. App. P. 4(a)(5)(A), (C); *see also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807-08 (7th Cir. 2011) (explaining the excusable neglect standard).

The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing fee is due at the time the notice of appeal is filed. Fed. R. App. P. 3(e). If Dooley cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* Fed. R. App. P. 24(a)(1)(C). The IFP motion must set forth the issues Dooley plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

On the other hand, if Dooley wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within 28 days of the entry of judgment, and the deadline *cannot* be extended. Fed. R. Civ. P. 59(e); 6(b)(2). The motion also must comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707-08 (7th Cir. 2010); *see also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest

error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. Fed. R. App. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. Fed. R. App. P. 4(a)(1)(A), (a)(4), & (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day window or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819-20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Dooley showing excusable neglect or good cause.

**IT IS SO ORDERED.**

**DATED:   July 14, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**